UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
GRAND STREET REALTY, LLC,    |
KAUFMAN, FRIEDMAN, PLOTNICK,    |
& GRUN, LLP    |
          Appellants,    |
    |    MEMORANDUM AND OPINION
    -against-    |    04-CV-4738 (CBA)
    |
RICHARD J. MCCORD,    |
          Appellee.    |
-----------------------------------------------------X
AMON, UNITED STATES DISTRICT JUDGE

       Before the Court is an appeal from an order of the bankruptcy court awarding attorneys'

fees and costs under 11 U.S.C. § 105(a) to appellee Chapter 7 trustee Richard McCord

("Trustee") as a sanction against appellants Grand St. Realty ("Landlord") and Kaufman,

Friedman, Plotnick & Grun, LLP ("Landlord's Counsel") (collectively, "Appellants").  The

bankruptcy court found, on the basis of facts which are summarized in greater detail below, that

the Appellants obstructed and delayed the Trustee in performing his fiduciary duty to inspect and

value possible property of the bankruptcy estate, motivated by a desire to protect its own interest

in the property in question.

       Appellants argue: (1) that 11 U.S.C. § 105(a) ("Section 105(a)") does not authorize a

bankruptcy court to award attorneys' fees and costs; (2) that, even if Section 105(a) does

authorize such an award, the bankruptcy court's finding that the Appellants did not act in good

faith was an abuse of the court's discretion; and (3) that the bankruptcy court further abused its

discretion by failing to scrutinize the amount of fees requested by Trustee.  Appellee in response

asks this Court to award "reasonable attorneys' fees and costs incurred in litigating this frivolous

appeal pursuant to Rule 11 of the Federal Rules of Civil Procedure."  Brief of Appellee Richard J.

1

McCord at 2 (Dec. 17, 2004) (hereinafter "Appellee's Brief").

**I.      Background**

Aldona Ambotiene ("Debtor") was the owner of Krezo Two, LLC ("Krezo Two"), a limited liability company which operated a restaurant at 318 Grand St. ("the Premises"). The Premises had been leased to Krezo Two by the Landlord for a term of 10 years beginning June 1, 2002 and expiring May 31, 2012. Debtor had signed the lease with the Landlord in her capacity as a member or agent of Krezo Two, and had also signed a separate personal guarantee of the lease in her individual capacity.

Debtor filed for relief under Chapter 7 of Title 11 of the United States Code ("the Bankruptcy Code") on December 30, 2003. Krezo Two did not itself declare bankruptcy, but appears by that time to have fallen in arrears on the rent for the Premises and to have ceased operating the restaurant. See Appellee's R3, Letter from Landlord's Counsel to Debtor (Dec. 2, 2003) (threatening legal proceedings against Debtor as guarantor for nonpayment of rent by Krezo Two).

Debtor listed the lease between Krezo Two and the Landlord in her petition, correctly describing the lease as between Grand Street Realty LLC as lessor and Krezo Two as lessee, but misstating her interest as "Lessee" (her individual interest was as a guarantor). Appellee's R2, Voluntary Petition of Aldona Ambotiene, Schedule G (Dec. 30, 2003) [hereinafter, "Petition"]. Debtor's petition also listed the Landlord as an unsecured creditor owed a debt of $14,770.92. Petition, Schedule F.

The largest non-exempt asset listed on Debtor's bankruptcy petition was certain restaurant Equipment with an estimated value of $7,000, which apparently was used in Krezo Two's business. Petition, Schedule B. Pursuant to his statutory obligation to investigate assets

of possible value to the bankruptcy estate, the Trustee sought access to the Premises in order to inspect the Equipment. The Debtor could not herself provide access because the Landlord had changed the locks sometime after she filed for bankruptcy, ostensibly to turn the heat on and keep pipes from freezing inside the shuttered restaurant. Appellants' Reply Brief at 6 n.2 (December 29, 2004); Appellants' R8, Transcript of Oral Argument at 22, In re Ambotiene, 316 B.R. 25 (Bankr. E.D.N.Y. April 19, 2004) (No. 03-27303) [hereinafter, "April 19 Hearing Transcript"].

The Trustee made several formal and informal requests to the Landlord for access to the Premises, stating his desire to inspect the Equipment contained therein. The first such requests that appear clearly in the Record were made through phone calls to Landlord's Counsel in the first week of February, 2004, see Appellee's R4, Letter from Maia Walter, Landlord's Counsel, to Richard McCord (Feb. 9, 2004) ("[L]ast week, I had several telephone discussions with one of your representatives in which your office requested access to inspect the Premises and inventory the restaurant equipment and other fixtures located in the Premises at this time."), although the Trustee suggested in argument to the bankruptcy court that he had sought access as early as January of that year. See April 19 Hearing Transcript at 51 ("This could have been resolved in January if I just got entrance into the premises."). The Landlord, typically through Landlord's Counsel, refused all of these requests.

On March 3, 2004, the Landlord, wanting to pursue state court remedies against Krezo Two for nonpayment of rent, moved in the bankruptcy proceeding for an Order for relief from the automatic stay on the grounds that the lease was not part of the bankruptcy estate because the Debtor personally was neither party nor signatory to the lease. See Appellants' R1, Amended Motion to Vacate Stay ¶¶ 2-10, In re Ambotiene (March 3, 2004) (No. 03-27303) [hereinafter,

3

"Motion for Stay Relief"]. The Trustee on March 12 filed a limited opposition to the Landlord's motion, arguing that stay relief would be inappropriate until the Landlord had granted Trustee access to the Premises, and the Trustee had determined whether they contained assets of value to the bankruptcy estate. See Appellants's R3, Affirmation in Limited Opposition to the Notice of Motion to Vacate the Automatic Stay, In re Ambotiene (March 12, 2004) (No. 03-27303) [hereinafter, "Limited Opposition"]. At the hearing on the Landlord's motion, the Trustee reiterated his requests for access. At about the same time, the Trustee decided to seek the court's formal assistance, and filed in the bankruptcy proceeding a Motion Compelling Access to Property of the Estate. This motion also asked the court to sanction the Landlord and Landlord's Counsel by awarding attorneys' fees and costs. In re Ambotiene, 316 B.R. 25, 31 (Bankr. E.D.N.Y. 2004).

After hearing arguments by the Landlord's Counsel, the Trustee and the Office of the United States Trustee, the bankruptcy court on April 6, 2004 ordered the Landlord to provide the Trustee with access to the Premises. Id. at 30. When the Landlord complied, the Trustee quickly determined that the Equipment contained therein was not of value to the bankruptcy estate, and dropped his limited opposition to the Landlord's Motion for Stay Relief. The Trustee maintained his request that the court impose sanctions on the Landlord and Landlord's Counsel pursuant to the court's authority under 11 U.S.C. § 105(a) to issue "any order...that is necessary or appropriate to carry out the provisions of this title."

The bankruptcy court on April 19, 2004 granted the Landlord relief from the automatic stay, and on September 17, 2004 issued its decision holding the Landlord and Landlord's Counsel jointly and severally liable for the Trustee's attorneys' fees and costs in the amount of $7,253.79. Id. at 31 n.1, 40–41.

Noting that an award of sanctions is "an extraordinary remedy," id. at 33, the court's decision reviewed several sources of authority for awarding sanctions, and the grounds required under each. The court considered 42 U.S.C. § 1988, 28 U.S.C. § 1927, Bankruptcy Rule 9011 and Federal Rule of Civil Procedure ("Rule") 11, Bankruptcy Rule 7037 and Rule 37, before ultimately awarding sanctions pursuant to the court's inherent power as expressed through 11 U.S.C. § 105(a). Id.

The court stated that section 105 "recognizes the Court's inherent power to maintain order in the courts, to punish inappropriate behavior, and to discipline attorneys when necessary," such as by awarding attorneys' fees and costs "in appropriate circumstances." Id. at 35–36. Nevertheless, the court emphasized that its inherent powers must generally be exercised "with restraint and discretion," id. at 36 (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991)), and especially so where they are used to award attorneys' fees "because such awards are an exception to the usual 'American Rule,' under which each party bears its own litigation costs." Id.

The court then found that it should consider four factors to determine whether an award of attorneys' fees and costs would be appropriate in this case: (1) whether the Chapter 7 trustee acted in good faith to pursue his statutory duties; (2) whether the response by the objecting party was made in good faith; (3) whether that party had an opportunity to correct its course but failed to do so; and (4) whether the Chapter 7 trustee or the bankruptcy estate was damaged by incurring unnecessary costs as a result of the objecting party's actions. Id. After weighing these four factors, the court concluded that the imposition of sanctions in the form of an award of reasonable attorneys' fees and costs was justified, and awarded the full $7,253.79 requested by the Trustee. Id. at 36–40.

The Landlord and Landlord's Counsel appealed the award to this Court.

## II.    Discussion

### A.    Jurisdiction and Standard of Review

This Court has jurisdiction over this appeal from a final order of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1).

The Court reviews the bankruptcy court's determinations of matters of law *de novo*. Asbestosis Claimants v. United States Lines Reorganization Trust (In re United States Lines, Inc.), 318 F.3d 432, 435 (2d Cir. 2003). The factual findings of the lower court must be upheld unless "clearly erroneous." Fed. R. Bankr. 8013; Asbestosis Claimants, 318 F.3d at 435. Matters left the court's discretion are reviewed for abuse of discretion. DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.), 151 F.3d 75, 79 (2d Cir. 1998).

### B.    The Bankruptcy Court's Authority to Impose Sanctions

In the present appeal, Appellants first argue that the bankruptcy court misconstrued the law in holding that section 105(a) authorized the court to sanction the Landlord and Landlord's Counsel by awarding attorneys' fees and costs to the Trustee. See Appellants' Brief at 9–11 (citing In re Lloyd Securities, 163 B.R. 242 (Bankr. E.D. Pa. 1994); In re Panaia, 65 B.R. 865 (Bankr. D. Mass. 1986)). Appellee responds that section 105(a) confers broad authority on bankruptcy courts, including the authority to impose sanctions in the form of attorneys' fees and costs. Moreover, Appellee urges, the bankruptcy court's action might also be upheld by this Court under 28 U.S.C. § 1927 ("section 1927"), which authorizes federal courts to impose such sanctions under certain circumstances.

Although this Court may uphold the bankruptcy court's actions on any basis urged by the

Appellee for which there is support in the record, <u>Schweiker v. Hogan</u>, 457 U.S. 569, 585 n.24 (1982), the Court does not find it necessary to reach Appellee's arguments regarding section 1927 because it finds that section 105(a) authorizes a bankruptcy court to impose sanctions in the form of an award of attorneys' fees and costs.

The "American Rule" generally provides that a litigant is responsible for his or her own attorneys' fees, and has no right to repayment by his or her opponent. <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 245, 247, 257 (1975). Exceptions to that rule allow federal courts to award attorneys' fees and costs to a party (1) when the recipient party has litigated for the benefit of a "common fund;" (2) when a party has willfully disobeyed a court order; or (3) when a party has acted in bad faith. <u>Alyeska</u>, 421 U.S. at 257–58; <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45–46 (1991). These exceptions reflect courts' "inherent power" to take those actions necessary "to achieve the orderly and expeditious disposition of cases." <u>Chambers</u>, 501 U.S. at 43; <u>Alyeska</u>, 421 U.S. at 259.

In addition, statutes or rules may specify other circumstances in which a court may award attorneys' fees. <u>Alyeska</u>, 421 U.S. at 260–63. For instance, 42 U.S.C. § 1988, 28 U.S.C. § 1927, Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9011, and Bankruptcy Rule 7037 all authorize the award of attorneys' fees and costs under specific circumstances. <u>See</u> <u>In re Ambotiene</u>, 316 B.R. at 33–35 (discussing scope of aforementioned authorizations).

Section 105(a) does not specifically address awards of attorneys' fees, but more broadly empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[1] An award of attorneys' fees and costs is

_____

[1] The complete text of 11 U.S.C. § 105(a) reads:
    The court may issue any order, process, or judgment that is necessary

plainly within "any order, process or judgment." The question therefore is whether such an award may be "necessary or appropriate to carry out the provisions of" the bankruptcy code. The Second Circuit, which has generally held that the language of section 105(a) "should be construed liberally," Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994), has construed this last phrase to mean that section 105(a) must be exercised in furtherance of specific provisions of the code, and not "as a roving commission to do equity." New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.), 351 F.3d 86, 92 (2d Cir. 2003) (quoting United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986)); Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.), 352 F.3d 671, 680 (2d Cir. 2003). Therefore, a court may award attorneys' fees and costs under section 105(a) if such an award will further specific provisions of the bankruptcy code.

In this case, the bankruptcy court imposed sanctions only after finding that the Trustee was in good faith attempting to fulfill the duties imposed on him by 11 U.S.C. § 704 and that the Appellants' failure to cooperate in good faith with those efforts damaged the Trustee or the bankruptcy estate. In re Ambotiene, 316 B.R. at 36–39. The court also noted that the business of being a Chapter 7 trustee is financially precarious even when all parties cooperate in good faith. Id. at 37. The sanction imposed amounted to restitution of the legal expenses incurred by the Trustee in attempting to secure the Landlord's cooperation. The sanction thus furthered the

_____

        or appropriate to carry out the provisions of this title. No provision of
        this title providing for the raising of an issue by a party in interest shall
        be construed to preclude the court from, sua sponte, taking any action
        or making any determination necessary or appropriate to enforce or
        implement court orders or rules, or to prevent an abuse of process.

purposes of § 704, by providing restitutionary damages for a party's failure to cooperate in good faith with a bankruptcy trustee's efforts to carry out the duties imposed by that section. The bankruptcy court's action therefore appears to be well within the authority conferred by section 105(a).

This conclusion is confirmed by a consideration of the "inherent power" under which federal courts may award reasonable attorneys's fees and costs independent of any statutory authority. The Supreme Court in <u>Chambers</u> characterized as "inherent" those powers which are "necessarily vested in [federal] courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." <u>Chambers</u>, 501 U.S. at 43. The Second Circuit has characterized section 105(a) similarly, as authorizing the broad exercise of the courts' equitable powers to address misconduct which interferes with the administration of bankruptcy estates or which "might impede the reorganization process." <u>In re Momentum Mfg. Corp.</u>, 25 F.3d at 1136 (internal quotation marks omitted); <u>see also</u> <u>Casse v. Key Bank Nat'l Ass'n</u> (<u>In re Casse</u>), 198 F.3d 327, 336 (2d Cir. 1999) ("Bankruptcy courts, both through their inherent powers as courts, and through the general grant of power in section 105, are able to police their dockets and afford appropriate relief." (<u>quoting</u> 2 Collier on Bankruptcy at 105-5 to -7 (15th ed. 1999))). Section 105(a) therefore appears to play a role similar to the courts' inherent powers, and to provide a statutory basis for exercising similar powers in the bankruptcy context.

The courts' inherent powers include the ability to award attorneys' fees and costs "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" <u>Chambers</u>, 501 U.S. at 45–46 (<u>quoting</u> <u>Alyeska</u> 421 U.S. at 258–59 (internal quotation marks omitted)). Although the Second Circuit has never addressed whether section 105(a) authorizes bankruptcy courts to exercise the sanctioning power discussed in <u>Chambers</u>, a number of other circuits have

held that it does.  See, e.g., In re Volpert, 110 F.3d 494, 499–501 (7th Cir. 1997) (finding

bankruptcy court had authority to impose sanctions under plain language of Section 105(a) but

finding it "unnecessary" to characterize that power as an inherent power); Rainbow Magazine,

Inc.  v. Unified Capital Corp., 77 F.3d 278, 284 (9th Cir. 1996) (imposing sanctions under

section 105(a) and court's inherent powers); Jones v. Bank of Santa Fe (In re Courtesy Inns), 40

F.3d 1084, 1089 (10th Cir. 1994) (awarding fees under Section 105(a) after concluding 28

U.S.C. § 1927 unavailable to bankruptcy courts).  Several district and bankruptcy courts within

the Second Circuit have agreed with those courts and have held that bankruptcy courts may

under section 105(a) award reasonable attorneys' fees and costs as a sanction for bad faith

conduct in the bankruptcy process.  See generally, e.g., Ngan Gung Restaurant v. Official

Comm. of Unsecured Creditors of Ngan Gung Restaurant (In re Ngan Gung Restaurant), 195

B.R. 593, 598–99 (S.D.N.Y. 1996) (stating "it is generally agreed" that bankruptcy courts may

sanction parties for acting in bad faith, and noting section 105(a) as commonly-cited authority

for that power); In re Hasan, 287 B.R. 308, 312 (Bankr. D. Conn. 2002) (awarding attorneys'

fees and costs as sanction under section 105(a)); In re Gorshtein, 285 B.R. 118, 124 (Bankr.

S.D.N.Y. 2002) (same);  In re Spectee Group, 185 B.R. 146, 155 (Bankr. S.D.N.Y. 1995)

(same); see also Waller v. Kriss (In re Kriss), 217 B.R. 147, 159 (Bankr. S.D.N.Y. 1998) (stating

section 105(a) authorizes sanctions against parties or counsel for misconduct during litigation).

　　　While the Second Circuit has not addressed the question of monetary sanctions under

section 105(a), it has found the section to permit injunctive relief from abusive practices such as

the serial-filing of meritless petitions.  See In re Casse, 198 F.3d at 336, 339.  In Casse, the

Second Circuit held that a bankruptcy court was authorized by sections 105(a) and 349(a) of the

Bankruptcy Code to dismiss "with prejudice" a Chapter 11 filing by a debtor who had previously

filed two such petitions but then taken no steps to reorganize and whose bad faith purpose to delay the foreclosure sale of a residence was "glaringly apparent." Id. at 332, 339. In support of this ruling, the Second Circuit cited an opinion of the Bankruptcy Court for the Northern District of Indiana, In re Earl, 140 B.R. 728 (Bankr. N.D. Ind. 1992), which likewise held that sections 105(a) and 349(a) allowed bankruptcy courts to enjoin filings by a serial bad faith filer. The Earl court reasoned that its obligation to "preserve the integrity of the bankruptcy system" compelled it to use the broad authority of section 105(a) to "fashion an appropriate remedy" for practices which "abuse the bankruptcy process" and which would otherwise be checked insufficiently. In re Earl, 140 B.R. at 741. That obligation likewise supports the imposition of monetary sanctions by a bankruptcy court faced with conduct that undermines the bankruptcy process and which may not otherwise adequately be remedied.

Only a few courts have held that section 105(a) does not authorize sanctions in the form of an award of attorneys' fees and costs.

Appellants cite without discussion Panaia v. The Connecticut National Bank, in which the Bankruptcy Court for the District of Massachusetts held that section 105(a) does not authorize an award of attorneys' fees "in the absence of specific statutory authority," and that Bankruptcy Rule 9011 provides the exclusive "means to challenge the good faith of litigation practices and obtain sanctions." In re Panaia, 65 B.R. 865, 869 (Bankr. D. Mass. 1986). Although it has not been overruled, the Panaia decision is of questionable value today. Panaia was handed down five years before the Supreme Court in Chambers held that "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." 501 U.S. at 49. Although a court "ordinarily should rely on the Rules rather than the inherent power," the court "may safely rely on its inherent power" if it finds, in its discretion, that no

statute or rule is "up to the task" of addressing the conduct at issue. Id. at 50. That reasoning applies equally well to the broad authority conferred by section 105(a), and undermines Panaia's assertion that Bankruptcy Rule 9011 provides an exclusive remedy for bad faith litigation conduct. Where at least some of the conduct complained of does not involve the filing of papers with the court, as here, Bankruptcy Rule 9011 is quite clearly not "up to the task," and a court may safely rely on more general authority such as that conferred by section 105(a).

Appellants also argue that this Court should follow the construction of section 105(a) set forth by the Bankruptcy Court for the Eastern District of Pennsylvania in Lloyd Securities, which held that, absent specific statutory authorization for fee-shifting, "the equities in favor of [a] party seeking compensation, even when aided by a broad statutory grant of equitable powers to the court as is provided in [section 105(a)], cannot support the granting of compensation from other interested parties or the Debtor's estate." See Appellants' Brief at 9–11 (quoting Lloyd Securities, 163 B.R. at 251)). Lloyd Securities is easily distinguished. First, insofar as the Appellants are neither "interested parties" nor the debtor's estate, see April 19 Hearing Transcript at 9 (stating Landlord asserts no claim against Debtor's estate), the holding from Lloyd Securities does not apply. Second, Lloyd Securities and the cases upon which that court relied involved requests that certain creditors' attorneys' fees be paid *by* the bankruptcy estate, 163 B.R. at 245–47, whereas the request here is that funds be paid *to* the bankruptcy estate (or to the Trustee who went unpaid because the bankruptcy estate lacked sufficient funds). Simply put, the equities balance differently when the issue is the disbursement of funds from a bankruptcy estate versus when it is the reimbursement of funds to the estate.

In In re. Kliegl Brothers Universal Electric Stage Lighting Co., Judge Holland asserted that section 105(a) was not an "appropriate basis" for imposing sanctions because it "speaks

merely prospectively...[authorizing] the court to take action 'to prevent an abuse of process.'" 238 B.R. 531, 553 (Bankr. E.D.N.Y. 1999) (quoting 11 U.S.C. § 105(a)). Instead, Judge Holland found that sanctions for past misconduct should be imposed under 28 U.S.C. § 1927, which compliments section 105(a) by "act[ing] retrospectively." Id. He further argued that relying on section 105(a) as authority to impose sanctions was "not a solution" but "merely sidesteps the jurisdictional ambiguities" involved in asserting section 1927 as a basis for sanctions. Id. at 554.

Judge Holland is surely correct that employing section 105(a) "sidesteps the jurisdictional ambiguities" relating to section 1927. This Court is not persuaded, however, that Section 105(a) endorses only prospective actions. The first sentence of section 105(a), in its entirety, states, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The plain meaning of this language endorses monetary sanctions at least insofar as they deter future misconduct—especially when that language is construed broadly, as the Second Circuit has emphasized that it should be. In In re Casse, the Circuit characterized section 105(a) as "an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power" and stated that the purpose of the section is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 198 F.3d at 336. In light of such guidance, this Court sees no reason to confine section 105(a) to purely injunctive relief. The threat of monetary sanctions can insure compliance with the Code just as effectively as an injunction might, and in some cases even more effectively.

Furthermore, where the jurisdictional ambiguities relating to section 1927 may be fatal, see Kliegl Bros., 238 B.R. at 550–55 (discussing extensive debate over whether section 1927 is available to bankruptcy courts), it cannot be considered an abuse of the court's discretion to

sidestep them by appealing to the more certain authority of section 105(a).  Cf. Chambers, 501

U.S. at 50 (finding decision to resort to inherent powers not to be an abuse of discretion).

This Court therefore joins those numerous other courts which have found that section

105(a) allows bankruptcy courts in certain circumstances to sanction parties by awarding

reasonable attorneys' fees and costs to their opponents.[2]


### C.        The Bankruptcy Court's Decision to Impose Sanctions

The Appellants' second contention is that the bankruptcy court abused its discretion by

imposing sanctions in this case, because the Appellants had "ample basis...to refuse to comply

with [the Trustee's] request." Appellants' Brief at 11, 15.

As an initial matter, this objection conflates two distinct issues and their respective

standards of review. The decision to impose sanctions is a matter committed to the court's

discretion (unless mandated by statute or rule) and is therefore reviewed for abuse of discretion.

Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re Highgate Equities, Ltd.), 279 F.3d

148, 151 (2d Cir. 2002).  The finding of bad faith that allows a court to impose sanctions,

however, is a factual finding that must be upheld unless it is "clearly erroneous."  See, e.g.,

McMullen v. Sevigny (In re McMullen), 386 F.3d 320, 328-29 (1st Cir. 2004); Casse v. Key

Bank Nat'l Ass'n (In re Casse), 198 F.3d 327, 333 (2d Cir. 1999) (reviewing for clear error

bankruptcy court's finding of bad faith); United States Fidelity & Guaranty Co. v. DJF Realty &

---

[2] Like the Volpert court, 110 F.3d at 500–501, this Court does not find it necessary to characterize the sanctioning power exercised here as an "inherent" one or to fully delineate the overlap, if any, between the authority conferred by section 105(a) and the bankruptcy court's inherent powers. Rather, this Court's ruling is limited to finding that the power exercised by the bankruptcy court in this case was within the plain language of section 105(a).

Suppliers, Inc., 58 B.R. 1008, 1011 (N.D.N.Y. 1986) (stating bad faith is factual issue subject to clearly erroneous standard of review, in context of involuntary bankruptcy petition); cf. Sierra Club v. United States Army Corps of Engineers, 776 F.2d 383, 390 (2d Cir. 1985) ("A district court's determination that bad faith exists is a factual finding which may only be set aside if it is clearly erroneous."). A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Metzen v. United States, 19 F.3d 795, 797 (2d Cir. 1994) (internal quotation marks omitted). Therefore, this Court reviews the bankruptcy court's decision to impose sanctions for abuse of discretion, and reviews the factual findings made in support of that decision for clear error.

The Second Circuit has held that in order to impose sanctions pursuant to its inherent powers, a court must find that the party to be sanctioned acted without a colorable basis and in bad faith. Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999). "Bad faith" in this context means that the party was motivated by improper purposes such as harassment or delay. Id. Similarly, a court may impose sanctions under section 1927 only "if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Id. (quoting Shafii v. British Airways, PLC, 83 F.3d 566, 571 (2d Cir. 1996)). This standard is effectively the same as that for imposing sanctions under a court's inherent powers. Id. Finally, the finding of bad faith must be supported by "a high degree of specificity in the factual findings of" the sanctioning court. United States v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991) (quoting Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986)). This Court finds that these are the appropriate standards for an imposition of sanctions by a bankruptcy court under section 105(a).

The bankruptcy court considered four factors in determining whether to award attorneys' fees and costs: (1) whether the Chapter 7 trustee acted in good faith to pursue his statutory duties; (2) whether the response by the objecting party was made in good faith; (3) whether that party had an opportunity to correct its course but failed to do so; and (4) whether the Chapter 7 trustee or the bankruptcy estate was damaged by incurring unnecessary costs as a result of the objecting party's actions. In re Ambotiene, 316 B.R. at 36. The Appellants contend that the bankruptcy court erred when it found under the second factor that the Appellants had not responded in good faith to the Trustee's efforts to obtain access to the Premises. Appellants' Reply Brief at 2 ("Appellants are challenging the Bankruptcy Court's . . . conclusion, based on facts which are not in dispute, that Appellants did not respond good faith . . . .").

As an initial matter, the Court notes that the Appellants have construed the bankruptcy court's finding of a lack of good faith when describing the Appellants' conduct as constituting a finding of "bad faith." See Appellant's Brief at 15 ("The issue is whether Grand Street's refusal to accede to the Trustee's request for access was so unfounded as to amount to bad faith on the part of Grand Street and its counsel, as Judge Stong concluded."). The Court adopts the Appellants' construction. "Good faith" and "bad faith" are generally antonyms, and mutually exclusive. Gerseta Corp. v. Wessex-Campbell Silk Co., 3 F.2d 236, 238 (2d Cir. 1924) ("Good faith is fidelity and honesty, and bad faith is the opposite; and the definition of one defines its antonym by the addition of a negative."); In re Leslie Fay Cos., 207 B.R. 764, 780-781 (Bankr. S.D.N.Y. 1997) ("[B]ad faith has been defined as the opposite of 'good faith' . . . ." (quotation marks omitted)).

Moreover, even if there were a perceptible difference between "an absence of good faith" and "bad faith"—an argument Appellants do not make—this Court is convinced that the third

factor considered by the bankruptcy court, whether the Appellants had an opportunity to correct their course but failed to do so, sufficiently tipped the balance that any sanctionable conduct would necessarily amount to "bad faith." The bankruptcy court found that the Landlord and Landlord's Counsel "had several weeks in which to reconsider their position, as well as the benefit of the Trustee's submissions, the position of the Office of the United States Trustee, and the views of the Court, but failed to change their course." <u>In re Ambotiene</u>, 316 B.R. at 38. An obstinate refusal to deviate from conduct lacking in good faith is more than mere absence of good faith, and qualifies as bad faith.

Insofar as "bad faith" reflects a party's state of mind, it can be evident in a variety of conduct. Many courts have found bad faith in practices which multiply the judicial proceedings for the purposes of harassing an opponent. <u>See</u>, <u>e.g.</u>, <u>Miller v. Cardinale</u> (<u>In re DeVille</u>), 361 F.3d 539, 541 (9th Cir. 2004) (upholding finding of bad faith where defendant business orchestrated bankruptcy filings to delay state court lawsuit); <u>In re Rimsat, Ltd.</u>, 212 F.3d 1039, 1049 (7th Cir. 2000) (affirming imposition of sanctions on counsel for argumentative and harassing behavior at deposition that included no substantive questions, and finding such conduct to constitute bad faith); <u>Fox Valley Constr. Workers v. Pride of the Fox Masonry & Expert Restorations</u>, 140 F.3d 661, 663 (7th Cir. 1998) (upholding finding of bad faith where party "engaged in a course of legal maneuvering designed to dodge the authority of the courts and the legal rights of their adversaries" including the filing of bankruptcy to stay automatically district court enforcement of a separate judgment). Other courts have found bad faith where parties knowingly misrepresent the facts or the law—whether to the court or to another party in pre-litigation transactions designed to secure a legal advantage. <u>See</u>, <u>e.g.</u>, <u>In re Cosmopolitan Aviation Corp.</u>, 763 F.2d 507, 509 (2d Cir. 1985) (finding parties who "continually

mischaracterized facts, prior proceedings and the law" acted in bad faith); In re 29 Newbury Street, Inc., 856 F.2d 424, 427 (1st Cir. 1988) (finding landlord acted in bad faith by obfuscating amount of rent due on a notice to quit in effort to create grounds to evict tenant).

The bankruptcy court's finding of a lack of good faith does not appear to be clearly erroneous. The court found that the Trustee made several requests for access to the Premises for the stated purpose of inspecting the Equipment, and that the Landlord (through Counsel) refused these requests because it believed it was "entitled to keep any value in the Equipment for itself." Id. at 32. The court found that the Trustee made his requests for access pursuant to statutory duties which bound him to inspect "actual or potential" property of the estate, under penalty of liability to creditors. Furthermore, the bankruptcy court found that "anybody with even a basic understanding of Chapter 7 and the role of a Chapter 7 trustee knows" that these are among a trustee's duties, and that the Appellants therefore must have understood that the Trustee was statutorily obligated to inspect the Equipment. Id. at 38 ("They had to have some understanding that the trustee had to come and look at" the Equipment (quoting United States Trustee, April 19 Hearing Transcript, at 49)). The Appellants nevertheless refused to allow the Trustee to carry out those duties, and failed to offer "any persuasive argument" justifying that refusal. Id. at 37. Instead, the Appellants argued that state law issues governing the proper ownership of the equipment should be resolved before the Landlord could have any obligation to provide access—even though the Trustee sought only to inspect the Equipment, and not to remove it. It is not clearly erroneous to infer bad faith on the basis of these facts.

Appellants' actions frustrated the Trustee's efforts to carry out his statutory duties. The Bankruptcy Code clearly imposed upon the Trustee a fiduciary duty to "close [the] estate as expeditiously as is compatible with the best interests of the parties in interest." 11 U.S.C. §

18

704(a)(1). "Property of the estate" is defined to include "all legal or equitable interests of the debtor in property as of the commencement of the case." Id. at §541(a)(1). The Equipment was listed in the Debtor's petition. Petition, Schedule B. In seeking to fulfill its statutory duties, a bankruptcy trustee is obligated to investigate the assets listed on the petition, and would reasonably seek to evaluate those assets before asserting ownership over them. That is how the Trustee proceeded in this case. The Appellants, however, sought to force the Trustee to litigate the issue of ownership before allowing him to inspect and evaluate the equipment. As the bankruptcy court found, the Appellants thus unnecessarily raised the costs of administering the estate, In re Ambotiene, 316 B.R. at 38–39, and frustrated the Trustee's ability to carry out his statutory duty to close the estate expeditiously.

Relatedly, the Appellants unnecessarily muddied the waters in this case by asserting irrelevant arguments about the nature of Debtor's ownership interest in the Equipment. The Appellants argued that they had no obligation to provide access to the Premises because the Equipment was owned by Krezo Two, not the Debtor, and because under New York Limited Liability Company Law ("NY LLC Law") the Debtor held an interest in Krezo Two itself but held no interest in the property of Krezo Two. See, e.g., Appellee's R4, Letter from Maia Walter, Landlord's Counsel, to Richard McCord (Feb. 9, 2004) (asserting equipment property of Krezo Two, not Debtor, and denying requests for access); see also N.Y. Ltd. Liab. Co. § 601. This "issue" is wholly irrelevant to the question of whether the Trustee should have access to the Premises. Even under the Appellants' construction of NY LLC Law, the bankruptcy estate would have had an interest in the Equipment contained in the Premises, as property of an LLC in which the estate held a membership interest. In order to evaluate that membership interest, the Trustee would have to evaluate the assets and liabilities of the LLC. Therefore, the Appellants'

19

arguments about NY LLC Law were of no consequence, and served only to frustrate the Trustee's efforts to fulfill his statutory duties.

Furthermore, the Landlord's Counsel stated to the bankruptcy court that if the Debtor had asked for keys to the Premises, the Appellants would have had "no choice" but to provide her access because she "had a right to get the keys and have the space." April 19 Hearing Transcript at 23. Nevertheless, the Appellants refused to provide even much more limited access—a short visit with an appraiser—to the Trustee who was administering the Debtor's estate and who had in most other respects stepped into her shoes. The Appellants further admitted to the bankruptcy court that they so refused in part because they intended to claim title to the Equipment for the Landlord. April 19 Hearing Transcript at 19–20. Since the only 'cost' to the Landlord of allowing the Trustee to inspect the Equipment was the risk that the Trustee might seek to assert ownership over the Equipment, it is difficult not to perceive in the Appellants' refusal a desire to obstruct and delay the Trustee in the hopes of deterring him from fulfilling his statutory duties.

The foregoing shows that the bankruptcy court's factual finding that the Appellants failed to respond in good faith to the Trustee's requests cannot be said to be clearly erroneous. Indeed, it appears that the Appellants were intent on delaying and deterring the Trustee with an eye towards claiming certain property for themselves, and not risking losing it to the bankruptcy estate. While this behavior may fall just short of creditor self-help, it is not clearly erroneous to characterize it as bad faith.

**D.     The Bankruptcy Court's Scrutiny of the Fees Requested**

The Appellants argue that the bankruptcy court was required to consider whether the specific fees requested by the Trustee were "reasonable and necessary," and failed to do so. Appellants' Brief at 16 (quoting In re Zepecki, 224 B.R. 907 (Bankr. E.D. Ark. 1998).

As an initial matter, the Appellants did not in the bankruptcy proceeding challenge the reasonableness of the hours worked or the rates charged.  In re Ambotiene, 316 B.R. at 40.  The Trustee asserts that the Appellants are therefore precluded from challenging the reasonableness of those items in this appeal.  Appellee's Brief at 20.  The Supreme Court has held that a reviewing court may hear an "issue not pressed [in the lower court proceeding] so long as it has been passed upon" by the lower court.   United States v. Williams, 504 U.S. 36, 41 (1992). Here, although Appellants did not raise the issue of the reasonableness of the requested attorneys' fees in the bankruptcy proceeding, the bankruptcy court nevertheless "passed upon" the issue in its decision.  See In re Ambotiene, 316 B.R. at 40.  Therefore, the issue may be heard in this appeal.

The determination of the amount of reasonable attorneys' fees to be awarded is a matter committed to the court's discretion.  Saulpaugh v. Monroe Cmty.  Hosp., 4 F.3d 134, 145 (2d Cir. 1993).  This Court therefore reviews the bankruptcy court's determination of the fee amount for an abuse of discretion.  See Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir. 1998).

As the Appellants note, the Supreme Court has held that a district court awarding attorneys' fees must "provide a concise but clear explanation of its reasons for the fee award." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) (discussing attorneys' fees awarded pursuant to the fee-shifting provisions of 42 U.S.C. § 1988).  In the Second Circuit, a court may determine the amount of attorneys' fees to be awarded by the "lodestar" method, under which the court multiplies the reasonable numbers of hours billed by the attorney by a reasonable hourly rate.

Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000). The court may in its discretion increase or decrease this amount to account for less objective factors by applying a multiplier to the unadjusted lodestar figure. Id.

Here, the Appellants argue that the Trustee's time sheets show that an unreasonable numbers of hours were billed for certain tasks, and that the overall request therefore was "unreasonable on its face." Appellants' Brief at 19. For instance, the Trustee billed one and a half hours, and his paralegal an hour, relating to the preparation and filing of an affirmation that was only slightly more than one page in length. See Appellants' R9, Supplemental Affirmation in Support of Trustee's Application for Sanctions, Exhibit A, In re Ambotiene (April 15, 2004) (No. 03-27303). In addition, the Trustee billed exactly three and a half hours for each of two court appearances—a coincidence the Appellants find more than suspicious, especially since the time sheets were submitted four days before the second court appearance. See Appellants' Brief at 18.

The bankruptcy court devoted five paragraphs in its Memorandum Decision to a discussion of the attorneys' fees and costs requested by the Trustee. It clearly found that the hourly billing rates asserted—$325 per hour for the Trustee, $175 per hour for an associate, and $90 per hour for a paralegal—were reasonable and consistent with the rates charged within the Eastern District of New York by similar attorneys performing similar tasks. In re Ambotiene, 316 B.R. at 40. The court also clearly found that the number of hours billed was reasonable. Id. Finally, the court provided an extended discussion of the reasons justifying its award of fees. See id. at 36–39. The bankruptcy court therefore satisfied Hensley's requirement of a "concise and clear"explanation of the award. 461 U.S. at 437.

The bankruptcy court's decision to award the complete lodestar figure requested by the Trustee does not appear to be an abuse of discretion. First, the Trustee's time sheets cover a period of five weeks but include a total of only 13 hours of the Trustee's time, 14.6 hours of an associate's time, and 2.3 hours of a paralegal's time. During this period, the Trustee (and/or his assistants) made two court appearances, researched and drafted an affirmation in opposition to the Landlord's Motion for Stay Relief, researched and drafted a motion to compel access to the Premises and accompanying memorandum of law, and reviewed documents filed by the Appellants relating to the same. [The Appellants have themselves asserted that the issues they themselves raised, and to which the Trustee necessarily responded, were 'complex'.] The overall number of hours worked, seen in this light, does not appear to be unreasonable.

Second, the specific hours billed by the Trustee for each task do not appear to be unreasonable. The Appellants specifically challenge the 12.6 hours the Trustee's associate spent drafting the Trustee's motion to compel access to the Premises and the memorandum of law which accompanied it, and the three hours the Trustee then spent reviewing the case file, the affirmation and the memorandum. See Appellants' Brief at 18. The Affirmation, which is five pages long, summarizes the factual background and legal basis supporting the Trustee's application for a motion to compel access to the Premises. The Memorandum of Law, which is eight pages long, elaborates on that basis and makes arguments predicated on NY LLC Law, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and case law. It cites five statutes or rules and ten cases. Sixteen hours of attorneys' time (rounding up) does not appear unreasonable for such a memo.

Third, while the bankruptcy court may have been somewhat incautious in accepting time sheets submitted on April 15, 2004 and purporting to bill hours for April 19, 2004, that decision

23

does not amount to an abuse of discretion, particularly where no objection was registered below to the documentation supporting the fees. The three and a half hours billed for the April 19 hearing match the three and a half hours billed for the March 29 hearing. Since the time sheets were submitted to the court at the April 19 hearing, the court could reasonably have concluded that it was an estimate based on the Trustee's prior court appearance, and that the number of hours itself was reasonable.

Finally, it is worth noting that the Trustee did not ask for attorneys' fees and costs for the period prior to the Landlord's initial Motion for Stay Relief, even though the Record shows that the Trustee spent at least some time trying unsuccessfully to obtain access to the Premises during that period.

For the foregoing reasons, the bankruptcy court did not abuse its discretion in awarding the complete lodestar figure requested by the Trustee, plus costs.

### E. Appellee's Motion for Attorneys' Fees and Costs Relating to This Appeal

Finally, the Trustee has moved for this Court to impose sanctions under Federal Rule of Civil Procedure 11 ("Rule 11") on the Landlord and Landlord's Counsel for filing the present appeal, because "Appellants continue to make the same frivolous arguments as they did in the bankruptcy court as to why they" refused to grant access to the Premises. Appellee's Brief at 23–24. Rules 11(b)(1), (b)(2) and (c) authorize a court to impose sanctions on an attorney who files papers that make arguments unwarranted in law or in a nonfrivolous argument to change the law, or who files papers for an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

Rule 11 sanctions are inapplicable here, because the Appellants have filed a good faith appeal. Insofar as the Appellants reiterate their arguments regarding access to the Premises, they have done so in an effort to show that those arguments had some foundation in law and that the Appellants acted in good faith in the lower court proceeding. Furthermore, the Appellants have raised the important issue of a bankruptcy court's authority to impose sanctions under Section 105(a), which is not clearly settled in this circuit. The Appellants thus have filed papers with a warranted basis in law or in a nonfrivolous argument to change the law. Furthermore, there has been no showing that the present appeal was filed for any improper purpose. Therefore, the Trustee's motion for Rule 11 sanctions is denied.

**III.      Conclusion**

For the foregoing reasons, the decision of the Bankruptcy Court for the Eastern District of New York award attorneys' fees and costs in the amount of $7,253.79 to the Trustee is affirmed.

SO ORDERED.


Dated:          Brooklyn, New York
                September 30, 2005


                                        Carol Bagley Amon
                                        United States District Judge